UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RHONDA C. BOURNE,  )<br>  )<br>    Plaintiff,  )<br>  )<br>  vs.  )<br>  )<br>CAROLYN W. COLVIN Commissioner of the  )<br>Social Security Administration,  )<br>  )<br>    Defendant.  ) | No. 2:14-cv-0075-JMS-MJD |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Rhonda C. Bourne applied for disability and disability insurance benefits from the Social Security Administration ("SSA") on March 23, 2011, alleging a disability beginning August 15, 2010. [Filing No. 12-2 at 15; Filing No. 12-5 at 2.] Her claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Henry Kramzyk (the "ALJ") on September 26, 2012. [Filing No. 12-2 at 34.] On October 19, 2012, the ALJ issued an opinion concluding that Ms. Bourne was not entitled to disability benefits. [Filing No. 12-2 at 26.] The Appeals Council denied her request for review on December 19, 2013, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 12-2 at 6.] Ms. Bourne filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## I.
### BACKGROUND

Ms. Bourne was forty-nine years old when she applied for disability benefits, alleging a disability onset date of August 15, 2010. [Filing No. 12-5 at 2.] She completed four years of college, [Filing No. 12-2 at 39], and detailed a lengthy work history at the hearing before the ALJ,

1

[Filing No. 12-2 at 39-48]. She worked primarily as a Certified Nursing Assistant for various entities. [Filing No. 12-2 at 39-48.]

At the hearing, Ms. Bourne testified that she suffers from Meniere's disease, grand mal seizures, secondary seizures, deafness in her right ear, partial deafness in her left ear, right ankle pain, depression, conversion disorder, and migraines. [Filing No. 12-2 at 48-50.] She detailed the medications she was currently taking but testified that she does not suffer side effects from those medications. [Filing No. 12-2 at 50-51.] At the hearing, Ms. Bourne testified that she has an attack from Meniere's disease approximately two or three days per week, and that the only thing she can do is to sleep on those days. [Filing No. 12-2 at 60.] Ms. Bourne further testified that she gets migraines three to four times per month, that they can last multiple days, and that medication only helps sometimes. [Filing No. 12-2 at 60.] Ms. Bourne contends that the cumulative effect of her medical conditions renders her disabled and prevents her from maintaining full-time work. [Filing No. 12-2 at 48.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on October 19, 2012, concluding that Ms. Bourne is not disabled. [Filing No. 12-2 at 15-26.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Bourne meets the insured status requirements of the Social Security Act through March 31, 2015. [Filing No. 12-2 at 17.] The ALJ further found that Ms. Bourne had not engaged in substantial gainful activity[1] since her alleged onset date. [Filing No. 12-2 at 17.]

---

[1] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

2

- At Step Two of the analysis, the ALJ found that Ms. Bourne has the following severe impairments: pseudo-seizures, a conversion disorder, and depression. [Filing No. 12-2 at 17.] The ALJ further found that Ms. Bourne has the non-severe impairments of hearing loss in her right ear, Meniere's Disease, a history of a gastric ulcer, irritable bowel syndrome, hemorrhoids, right ankle pain, and osteoarthritis of her knees. [Filing No. 12-2 at 17.]

- At Step Three of the analysis, the ALJ found that Ms. Bourne did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 18.]

- The ALJ concluded that through the date of last insured, Ms. Bourne had the residual functional capacity ("RFC") to perform light work, except that she can lift and/or carry 20 pounds occasionally, and 10 pounds frequently, can sit up to six hours of an eight-hour workday, and can stand and/or walk up to six hours of an eight-hour workday. [Filing No. 12-2 at 20.] Her RFC provides that Ms. Bourne can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds. [Filing No. 12-2 at 20.] The RFC also includes restrictions prohibiting Ms. Bourne from any exposure to wetness, unprotected heights, dangerous machinery, and driving. [Filing No. 12-2 at 20.] The RFC notes that Ms. Bourne is able to understand, remember, and carry out short, simple, repetitive instructions; sustain attention or concentration for two-hour periods at a time and for eight-hours in a workday on short, simple, repetitive instructions; use judgment in making work decisions related to short, simple, and repetitive instructions; and that she requires an occupation with a set routine and procedures, few changes during the workday, with no fast-paced production work. [Filing No. 12-2 at 20.] The RFC states that Ms. Bourne can

- maintain regular attendance and be punctual within customary tolerances and that she can perform activities within a schedule. [Filing No. 12-2 at 20.]

- At Step Four of the analysis, the ALJ concluded that Ms. Bourne was unable to perform any past relevant work. [Filing No. 12-2 at 24.]

- At Step Five of the analysis, the ALJ concluded that considering Ms. Bourne's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. [Filing No. 12-2 at 25.] The ALJ specifically relied on testimony from the vocational expert ("VE") who testified at the hearing and identified unskilled jobs such as encapsulator, office helper, inspector, wire prep tender, and electronics worker. [Filing No. 12-2 at 25.]

- Based on these findings, the ALJ concluded that Ms. Bourne is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits. [Filing No. 12-2 at 26.]

Ms. Bourne requested that the Appeals Council review the ALJ's decision, but that request was denied on December 19, 2013, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 12-2 at 6-8.] Ms. Bourne now seeks relief from this Court. [Filing No. 1.]

## II.
## STANDARD OF REVIEW[2]

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212,

---

[2] Ms. Bourne filed the brief supporting her petition for review as a "Motion for Summary Judgment," [Filing No. 16], but the Court will apply the well-established standards for reviewing a social security decision.

214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

5

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Ms. Bourne challenges the ALJ's decision on multiple bases. [Filing No. 17.] First, she argues that the ALJ's adverse credibility determination is flawed. [Filing No. 17 at 9-13.] Second, she contends that the ALJ erred in rendering his RFC assessment. [Filing No. 17 at 13-19.] Contained in each of these general, overarching arguments are sub-arguments, which Ms. Bourne has developed to varying degrees.[3] The Court finds clear merit in one of these sub-arguments—

---

[3] The Court cautions counsel to be sure to adequately develop arguments she intends for the Court to address on appeal to avoid them being waived. *Cadenhead v. Astrue*, 410 F. App'x 982, 984 (7th Cir. 2011) (citing *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001)).

6

that the ALJ's opinion ignores evidence of Ms. Bourne's migraines and their effect on her functional capacity. [Filing No. 16 at 20.] Thus, the Court begins its analysis with that issue. The Commissioner opposes Ms. Bourne's request to reverse the ALJ's decision, [Filing No. 24], and the Court will detail those arguments regarding the issues addressed below as necessary.

### A. Ms. Bourne's Migraines

Ms. Bourne argues on appeal that the ALJ's decision denying her disability benefits must be reversed because the ALJ never reconciled "the evidence of the frequency of her pseudoseizures, migraines, and Meniere's exacerbations" with her RFC. [Filing No. 17 at 15-16.] Ms. Bourne points out that the ALJ's opinion "is devoid of any mention of migraines/headaches and their frequency/limiting impact on Plaintiff's RFC." [Filing No. 17 at 16.] She emphasizes that an RFC "is supposed to set forth the most one can do despite her limitations or restrictions on a regular and continuing basis." [Filing No. 17 at 16.]

The Commissioner does not expressly respond to Ms. Bourne's argument that the ALJ's decision ignores evidence of Ms. Bourne's migraines, as well as her testimony at the hearing regarding their limiting effect on her ability to work. [Filing No. 24.] In detailing Ms. Bourne's medical treatment, however, the Commissioner acknowledges that there is medical evidence of Ms. Bourne's migraines in the record. [*See, e.g.*, Filing No. 24 at 3 (referencing Filing No. 12-12 at 23 (Dr. Seitz report from August 10, 2012, concluding "Meniere's [disease] component of dizziness seems well controlled . . . migraines and seizures may play a role in possible central vertigo").]

In her reply, Ms. Bourne points out that the Commissioner's response is confusing because she acknowledges evidence of Ms. Bourne's seizures and migraines that "would seem to belie" the ALJ's conclusions. [Filing No. 25 at 2-3.]

7

The Court defers to an ALJ's factual determinations if they are supported by substantial evidence. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 42 U.S.C. § 405(g)). The ALJ "is not required to discuss every piece of evidence, but must build a logical bridge from evidence to conclusion." *Villano*, 556 F.3d at 562 (collecting cases). The ALJ "may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004)).

The ALJ must consider the aggregate effect of the claimant's "entire constellation of ailments," including those that in isolation are not severe. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *see also* 20 C.F.R § 404.1545(e) (the ALJ "will consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's RFC]."). Moreover, the ALJ cannot reject a claimant's statements about the effects of her symptoms on her ability to work simply because the available objective medical evidence does not substantiate the statements. 20 C.F.R. § 404.1529(c)(2). If the ALJ's decision "lacks adequate discussion of the issues, it will be remanded." *Villano*, 556 F.3d at 562.

On her disability form, Ms. Bourne specifically listed "migraines" as one of the medical conditions that precludes her from working. [Filing No. 12-6 at 46.] At the hearing, Ms. Bourne testified about her migraines, which the ALJ acknowledged. [Filing No. 12-2 at 50 (ALJ: "Do you have migraines also?" Ms. Bourne: "Yes.").] Ms. Bourne went on to detail the specific nature of the pain and that she takes medication for her migraines. [Filing No. 12-2 at 50-51.] Ms. Bourne testified that she gets migraines "three or four times a month" and that they sometimes last "two and three days." [Filing No. 12-2 at 60.] The VE testified that no jobs would exist for someone with Ms. Bourne's limitations who "could not maintain regular attendance." [Filing No. 12-2 at 71.] The Commissioner does not dispute that there is medical evidence in the record regarding

Ms. Bourne's migraines. [*See, e.g.*, Filing No. 24 at 3 ("In January 2012 . . . Plaintiff continued to complain of migraines, seizures and double vision.") (referencing Filing No. 12-12 at 30-32); Filing No. 24 at 3 (referencing Filing No. 12-12 at 23 (Dr. Seitz report from August 10, 2012, concluding "Meniere's [disease] component of dizziness seems well controlled . . . migraines and seizures may play a role in possible central vertigo").]

The Court agrees with Ms. Bourne that the ALJ's decision ignores the line of evidence in the record regarding her migraines and the functional impact she alleges her migraines have on her ability to work. At Step Two, the ALJ did not classify Ms. Bourne's migraines as severe or non-severe. [Filing No. 12-2 at 17-18.] In crafting the RFC, the ALJ stated that Ms. Bourne "alleges that she cannot work due to her pseudo-seizures, conversion disorder, and depression[,]" but he did not mention her migraines. [Filing No. 12-2 at 21.] The ALJ "may not ignore an entire line of evidence." *Terry*, 580 F.3d at 477. The ALJ's silence regarding the evidence and testimony about Ms. Bourne's migraines makes it impossible for this Court to tell whether the ALJ's decision rests upon substantial evidence. *Golembiewski*, 322 F.3d at 917 ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling . . . . Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence."). Accordingly, remand is required. *Id.*; *Villano*, 556 F.3d at 562 (holding that if the ALJ's decision "lacks adequate discussion of the issues, it will be remanded").

**B. Other Issues Raised**

Given the Court's reason for remand, it cannot address Ms. Bourne's remaining arguments in detail because it is impossible to tell whether the ALJ's decision rests upon substantial evidence. *Golembiewski*, 322 F.3d at 917. That said, on remand, the ALJ should take care to sufficiently explain his rationale and build a logical bridge between the evidence and his conclusions, making

sure to explain why he discounts evidence contrary to his conclusion. For example, as the Commissioner admits in her response, the ALJ's reliance on the alleged "lack of coordination of care among [Ms. Bourne's] doctors" to support the adverse credibility finding "could probably have [been] clearer," [Filing No. 24 at 7], and as Ms. Bourne contends, may have impermissibly crossed the line into the ALJ playing doctor, [Filing No. 17 at 9-10]. Additionally, on remand the ALJ must also make sure to craft an RFC that accounts for the aggregate effect of the claimant's "entire constellation of ailments," including those that in isolation are not severe. *Golembiewski*, 322 F.3d at 918; 20 C.F.R § 404.1545(e); *see* [Filing No. 17 at 11 (arguing that the ALJ fails to reconcile how Ms. Bourne can maintain employment despite time off for her pseudoseizures and that if he "did not believe the frequency of her seizures, he certainly fails to explain why")].

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Bourne benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). The Clerk is directed to **TERMINATE** Ms. Bourne's motion. [Filing No. 16.] Final judgment will issue accordingly.

March 10, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

10

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov